**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **JAMES HOVANAS and JAMES MACALLA,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:09-CV-0209-B** |
| | § | |
| **AMERICAN EAGLE AIRLINES, INC.,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are Defendant American Eagle Airlines, Inc.'s Motion for Summary Judgment On All Of Plaintiff James MacAlla's Claims (doc. 32) and Defendant American Eagle Airlines, Inc.'s Motion for Summary Judgment On All of Plaintiff James Hovanas' Claims (doc. 34) ("American Eagle's Motions for Summary Judgment").[1] For the reasons stated below, the Court finds American Eagle's Motions for Summary Judgment should be and hereby are **DENIED** (docs. 32, 34).[2]

---

[1]Because American Eagle's Motions for Summary Judgment contain closely aligned issues, the Court will combine its ruling on the two Motions in this opinion.

[2]This Memorandum Opinion and Order is entered in conjunction with the Court's Order on Defendant's Objections To and Motion to Strike Portions of Plaintiff James Hovanas' Summary Judgment Evidence and Unsupported Statement of Facts in Response (doc. 51) and Defendant's Objections To and Motion to Strike Portions of Plaintiff James MacAlla's Summary Judgment Evidence and Unsupported Statement of Facts in Response (doc. 52).

## I.

## BACKGROUND[3]

This action arises out of Plaintiffs James Hovanas' and James MacAlla's ("Plaintiffs") employment with Defendant American Eagle Airlines, Inc. ("American Eagle"). American Eagle employs over 4,000 pilots and instructors who fly its aircraft on national and international flights. (Compl. ¶ 10.) Plaintiff James Hovanas ("Hovanas") was employed by American Eagle as a pilot, a line check airman, and an advanced simulator instructor. (*Id.* at ¶ 11.) Similarly, Plaintiff James MacAlla ("MacAlla") was employed by American Eagle as a pilot, an instructor, and in various managerial positions. (*Id.* at ¶ 17.)

Both Plaintiffs ultimately served as instructors at the American Eagle Training Center in Fort Worth, Texas ("Training Center"). (*Id.* at ¶¶ 13, 19.) In accordance with federal aviation regulations, all American Eagle flight instructors must be officially qualified to instruct on a particular type of aircraft in order to serve as an instructor for that type of aircraft. (Def. American Eagle Airlines, Inc.'s Br. In Supp. Of Its Mot. For Summ. J. On All of Pl. James Hovanas' Claims "Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims" 2; Def. American Eagle Airlines, Inc.'s Br. In Supp. Of Its Mot. For Summ. J. On All of Pl. James MacAlla's Claims "Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims" 2.) In February 2007, Hovanas became qualified as an Embraer Regional Jet ("ERJ") Simulator Instructor. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims

[3]The Court takes its factual account from those uncontested facts contained in the parties' pleadings and papers filed with the Court. Any disputed fact is identified as the allegation of a particular party.

4.) Hovanas never obtained any other instructor qualifications.[4] (*Id.*) On December 5, 2007, Hovanas turned 60 years of age. (Compl. at ¶ 15.)

MacAlla became qualified as an ERJ Simulator Instructor in March 1999. (Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 3-4.) After being hired as an instructor at the Training Center, MacAlla went on to serve as the Manger of Training and Standards in the ERJ program from December 1999 until May 2007. (*Id.* at 4.) MacAlla alleges he was unable to maintain his ERJ Simulator Instructor qualification during this time due to the time demands of his responsibilities as Manager of Training and Standards. (Br. In Supp. Of Pl. MacAlla's Resp. In Opp'n to Def.'s Mot. For Summ. J. ("MacAlla's Resp.") 4.) His qualification thus having lapsed, MacAlla became re-qualified as an ERJ Simulator Instructor on July 18, 2007. (*Id.* at 4.) MacAlla turned 60 years of age prior to this re-qualification on June 1, 2007. (Compl. at ¶ 26.)

**A. MacAlla's Participation in an Internal Investigation**

In January 2007, MacAlla was serving as the Manager of Training and Standards at the Training Center. (*Id.* at ¶ 19.) MacAlla alleges he witnessed American Eagle Training Center employee Allen Hill ("Hill") threaten a student with a knife. (*Id.* at ¶ 20.) MacAlla subsequently participated as a witness in an internal investigation regarding the event (the "internal investigation"). (*Id.* at ¶ 21.) Following his participation in the internal investigation, MacAlla alleges his project deadlines were shortened to an impossible degree rendering him incapable of effectively performing his duties as Manager of Training and Standards. (*Id.* at ¶¶ 22-23.) As a

[4]Notably, Hovanas alleges his inquiries about obtaining additional qualifications were ignored by American Eagle management. (Pl. Hovanas' Br. In Supp. Of His Resp. In Opp'n to Def.'s Mot for Summ. J. ("Hovanas' Resp.") 4.)

result, MacAlla asked to be returned to instructor status, and his request was granted. (*Id*. at ¶ 24.)

**B. The American Eagle Seniority List**

According to the Plaintiffs, the Air Line pilots Association, International local ("ALPA") posted an American Eagle Seniority List (the "Seniority List") in May 2008 in which all American Eagle employees were listed according to their respective hire dates. (*Id*. at ¶¶ 27-28.) The Seniority List allegedly determined the priority of leave and vacation requests as well as what positions an employee could bid upon. (*Id*. at ¶ 28.) Neither Hovanas nor MacAlla was listed on the Seniority List. (*Id*. at ¶ 29.) Plaintiffs allege they notified ALPA of their omission from the Seniority List on June 3, 2008. (*Id*. at ¶ 30.) After not receiving any response to this communication, Plaintiffs filed a formal grievance with American Eagle under Section 20 of the Collective Bargaining Agreement existing between American Eagle and ALPA ("CBA") on October 6, 2008. (*Id*. at ¶ 33.) In the grievance, Plaintiffs cited American Eagle's failure to include them on the Seniority List, as well as its failure to provide any response to Plaintiffs' previous protest letter. (*Id*.)

**C. The Reduction-In-Force and Plaintiffs' Displacement**

According to American Eagle, the number of instructors employed at the Training Center is determined by the number of training events the Training Center intends to conduct. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 4; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 4.) Accordingly, when there is less need for training events, American Eagle must conduct headcount reductions, or "displacements," among its Training Center employees. (*Id*.) In September 2008, American Eagle issued a memorandum to its employees regarding the need for displacements within the Training Department. (Compl. ¶ 31.) American Eagle alleges that when the need for displacements arises, it is first determined if there are any volunteers for displacement

per the terms of the CBA. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 4; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 5.) If there are not enough volunteers to satisfy the headcount reduction necessary, the CBA leaves the criteria for selecting the remaining displacements to "the Company's discretion." (*Id.*) The memorandum issued to the Training Center employees in September 2008 noted the displacements would occur in strict accordance with the CBA. (Compl. at ¶ 32.)

Once an instructor is selected for displacement, American Eagle alleges he may have the option of returning to the flight line to fly American Eagle's passenger aircraft. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 5; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 5.) However, flight instructors who have reached the federally mandated retirement age are disqualified from returning to the flight line.[5] (*Id.*) Instead, such flight instructors can either apply for other available positions within American Eagle or retire. (*Id.*)

Hovanas was notified of his displacement on October 20, 2008. (Compl. ¶ 35.) MacAlla was notified of his displacement on October 14, 2008. (*Id.* at ¶ 36.) Both Hovanas and MacAlla had reached the age of 60 prior to their displacements. (*Id.* at ¶¶ 15, 26.) The Plaintiffs allege they were

---

[5]On December 13, 2007, Congress enacted the Fair Treatment of Experienced Pilots Act ("FTEPA") under which the maximum age pilots could fly commercial airlines was increased from 60 to 65. *See* 49 U.S.C. § 44729; 14 C.F.R. §121.383(c). However, FTEPA included a non-retroactivity clause which provided "[n]o person who has attained 60 years of age before the date of enactment of this section may serve as pilot for an air carrier . . . unless (A) such person is in the employment of that air carrier in such operation on such date of enactment as a required flight deck crew member; or (B) such person is newly hired by an air carrier as a pilot on or after such date of enactment without credit for prior seniority or prior longevity . . . ." § 44729(e). Notably, American Eagle did not consider ERJ Simulator Instructors "required flight deck crew members." (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 5 n. 3; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 6 n. 4.) Accordingly, pilots who turned 60 prior to December 13, 2007, such as Hovanas and MacAlla, could only return to the flight line if they were newly hired into an open, available position without their accrued seniority.

never notified at the time of their displacements of any alternative positions or available job postings with American Eagle. (Pl. Hovanas' Br. In Supp. Of His Resp. In Opp'n to Def.'s Mot for Summ. J. ("Hovanas' Resp.") 7; MacAlla's Resp. 7.) Subsequently, Plaintiffs filed a claim with the Equal Employment Opportunity Commission ("EEOC") against American Eagle and were issued a right to sue notice on November 5, 2008. (Compl. at ¶¶ 37-38.)

**D. The Instant Action**

Plaintiffs filed suit against American Eagle on February 2, 2009. (*See generally id.*) In their Complaint, Plaintiffs assert claims for age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Texas Commission on Human Rights Act ("TCHRA") and retaliation in violation of the anti-retaliation provisions of the ADEA and TCHRA. (*Id*. at ¶¶ 39-70.) Specifically, Plaintiffs allege they were discriminated against because they were over 60 years of age. (*Id*.) Further, Plaintiffs allege they were fired in retaliation for their filing of a grievance and MacAlla's participation in the internal investigation.

On January 22, 2010, American Eagle filed the instant Motions for Summary Judgment. Having considered the parties briefing and the relevant law, the Court turns to the merits of its decision.

## II.

## LEGAL STANDARD

**A. Summary Judgment**

The purpose of summary judgment is "to enable a party who believes there is no genuine dispute as to a separate fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S.

871, 888 (1990). Accordingly, Federal Rule of Civil Procedure 56(c) provides summary judgment is appropriate "when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The substantive law governing a matter determines which facts are material to a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The summary judgment movant bears the burden to prove that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs*, 919 F.2d 301, 303 (5th Cir. 1990). However, if the non-movant ultimately bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Rather, the summary judgment movant may satisfy its burden by pointing to the mere absence of evidence supporting the non-movant's case. *Id.*

Once the summary judgment movant has met this burden, the non-movant must designate specific facts that show there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam) (citing *Celotex*, 477 U.S. at 325). Factual controversies regarding the existence of a genuine issue for trial must be resolved in favor of the non-movant. *Little*, 37 F.3d at 1075. However, the non-movant must produce more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). If the non-movant is unable to make such a showing, the court must grant summary judgment. *Little*, 37 F.3d at 1075.

**B. The Age Discrimination in Employment Act**

The ADEA makes it unlawful for an employer to discharge and/or discriminate against an individual because of his/her age. 29 U.S.C. § 623(a). To assert a claim for discrimination under

the ADEA, "[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2351 (2009). In the context of this but-for causation standard, the Court applies the *McDonnell Douglas* burden shifting approach to determine whether a plaintiff has effectively asserted a claim under the ADEA. *See Bell v. Raytheon Co.*, No. 3:08-cv-0702-G, 2009 WL 2365454, at *4-*5 (N.D. Tex. July 31, 2009); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under the *McDonnell Douglas* approach, a plaintiff must first establish a *prima facie* case of discrimination. *Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005). A plaintiff discharged as part of an employer's reduction-in-force ("RIF") may establish a *prima facie* case by showing that he is within the protected age group, that he has been adversely affected, that he was qualified to assume another position at the time of the discharge, and that the employer intended to discriminate as to age in making the decision in question. *Amburgey v. Cohart Refractories Corp.*, 936 F.2d 805, 812 (5th Cir. 1991).

In response, a defendant may offer a legitimate, nondiscriminatory reason for the employment action. *Baker*, 430 F.3d at 753. Once a defendant has articulated such a reason, the plaintiff must show the reason is merely a pretext for discrimination. *Id*. at 753-54. A Plaintiff may show an employer's proffered reason to be pretext either by directly showing that a discriminatory reason motivated the adverse employment decision or by indirectly showing the employer's reason to be unworthy of credence. *Hall v. Gilman, Inc.*, 81 F.3d 35, 37 (5th Cir. 1996). "At all times, the burden of persuasion falls on the plaintiff." *Baker*, 430 F.3d at 754.

The ADEA further makes it unlawful for an employer "to discriminate against any of his

employees or applicants for employment . . . because such individual . . . has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). The Court employs the same *McDonnell Douglas* burden shifting approach to determine whether a claim for retaliation has been effectively asserted. *Reilly v. Capgemini Am., Inc.*, No. 3:05-CV-1162-K, 2007 WL 945685, at *4 (N.D. Tex. Mar. 28, 2007). To establish a *prima facie* retaliation claim under the ADEA, a plaintiff must show he was engaged in protected activity, he suffered an adverse employment action, and a causal link existed between the protected activity and the adverse employment action. *Hortzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001).

**C. The Texas Commission on Human Rights Act**

The TCHRA also makes it unlawful for an employer to discharge and/or discriminate against an individual because of such individual's age. TEX. LAB. CODE § 21.051(1). The TCHRA further provides:

> An employer, labor union, or employment agency commits an unlawful employment practice if the employer, labor union, or employment agency retaliates or discriminates against a person who, under this chapter: (1) opposes a discriminatory practice; (2) makes or files a charge; (3) files a complaint; or (4) testifies, assists, or participates in any manner in any investigation, proceeding, or hearing.

*Id.* at § 21.055. Texas state courts construe the TCHRA consistently with federal law interpreting the ADEA. *Badilla v. Bombardier Aerospace Corp.*, No. Civ. A. 302CV1021D, 2003 WL 23017671, at *2 (N.D. Tex. Dec. 18, 2003).

## III.

## ANALYSIS

American Eagle has moved for summary judgment on Plaintiffs' age discrimination and retaliation claims under the ADEA and TCHRA. The Court will separately consider the discrimination and retaliation claims in turn.

### A. Plaintiffs' Age Discrimination Claims Under the ADEA and TCHRA

American Eagle contends Plaintiffs cannot establish two essential elements of their *prima facie* case of discrimination under the ADEA and TCHRA.[6] (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 16; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 17.) Specifically, American Eagle argues neither Plaintiff can show he was qualified to assume another position at the time of his displacement, nor that he was discharged by American Eagle due to his age. (Br. In Supp. Of Mot For Summ. J. On Hovanas' Claims 16; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 18.) Further, American Eagle contends its actions were based on legitimate, non-discriminatory motives - namely the need for a RIF at the Training Center. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 19-20; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 21-22.)

Plaintiffs respond that they were clearly qualified to assume another position at the time of their displacement because they possessed valuable experience and had never received negative performance reviews. (Hovanas' Resp. 17; MacAlla's Resp. 18. ) Further, the Plaintiffs argue the

[6] American Eagle concedes that Plaintiffs are members of the protected age group and have been adversely affected. (Def. American Eagle Airlines, Inc.'s Br. In Supp. Of Its Mot. For Summ. J. On All Of Pl. James Hovanas' Claims 16; Def. American Eagle Arlines, Inc.'s Br. In Supp. Of Its Mot. For Summ. J. On All Of Pl. James MacAlla's Claims 17.)

fact they were both over age 60 and more qualified than those employees retained shows they were discharged because of their age. (Hovanas' Resp. 17-18; MacAlla's Resp. 19.) Finally, Plaintiffs contend American Eagle's proferred reason for the displacement is clearly pretextual. (Hovanas' Resp. 18-20; MacAlla's Resp. 19-21.) To support this contention, Plaintiffs note American Eagle only displaced individuals over age 60, hired new employees into the Training Department at the end of 2009, had a financial incentive to fire more senior employees, and discharged Plaintiffs when they were clearly more qualified than those employees not displaced. (*Id.*)

The Court will begin its analysis by determining whether the Plaintiffs have effectively established their *prima facie* case. In regard to the Plaintiffs' qualifications for another position, Plaintiffs have offered an instructor qualifications list noting the date the Training Center's instructors received their various training qualifications. (*See* App. To Pl. James Hovanas' Br. In Supp. Of His Resp. In Opp'n to Def.'s Mot. For Summ. J. ("Hovanas App.") 6-10; App. To Pl. James MacAlla's Br. In Supp. Of His Resp. In Opp'n to Def.'s Mot. For Summ. J. ("MacAlla App.") 6-10.) Further, both Plaintiffs attested that they never received a negative performance review during their tenure with American Eagle. (*See* Hovanas App. 2; MacAlla App. 2.) The Court finds such evidence sufficiently raises an issue of material fact as to whether Plaintiffs were qualified for another position.

Plaintiffs further contend the fact they were both over age 60 and more qualified than those employees retained shows they were discharged because of their age. A plaintiff's subjective belief that his discharge was based on age alone is insufficient to establish an ADEA claim. *Waggoner v. City of Garland, Texas*, 987 F.2d 1160, 1164 (5th Cir. 1993). However, Plaintiffs are not basing their argument only on their subjective belief, but rather offer evidence of their age combined with

evidence of their qualifications compared to those employees not displaced. (*See* Hovanas App. 6-10; MacAlla App. 6-10.) The Court finds a comparison of such qualifications combined with the fact both Plaintiffs were over age 60 upon their displacement sufficiently raises an issue of material fact as to whether they were discharged because of their age. Accordingly, the Plaintiffs have effectively established a *prima facie* case of age discrimination under the ADEA and TCHRA.

The Court next looks to any legitimate, non-discriminatory reason offered by American Eagle for the Plaintiffs' termination and whether such reason is pretext. American Eagle notes the decision to displace Hovanas and MacAlla was made as part of a RIF. The Fifth Circuit recognizes RIFs as presumptively legitimate, non-discriminatory reasons for adverse employment decisions. *Equal Employment Opportunity Comm'n v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996). The consideration of a RIF to be presumptively legitimate stems, in part, from the Court's reluctance to substitute its own business judgment for that of the actual business itself. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir. 1992) ("The ADEA was not intended to be a vehicle for judicial second guessing of business decisions, nor was it intended to transform the courts into personnel managers."). Thus, to show a RIF to be pretextual an employee must show he was clearly better qualified than those employees who were not displaced. *Walther*, 952 F.2d at 123; *Chapman v. Dallas Morning News, L.P.*, No. 3:06-cv-2211-B, 2008 WL 2185389, at *8 (N.D. Tex. May 27, 2008). "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).

The Plaintiffs have offered evidence showing they possessed their instructor qualifications for a longer period of time than some employees not displaced. (*See* Hovanas App. 6-10; MacAlla

App. 6-10.) Further, Plaintiffs note they have never received a negative performance review. (*See* Hovanas App. 2; MacAlla App. 2.) MacAlla additionally points to his experience as Manager of Training and Standards for the ERJ program as evidence of superior qualifications. (*See* MacAlla App. 2-3.) Further, Hovanas notes he attempted to acquire additional qualifications but his requests were ignored by American Eagle management. (See *id.*) Taking these factors into account, the Court finds Plaintiffs have sufficiently raised an issue of material fact as to whether they were clearly more qualified than those employees retained. As such, an issue of material fact exists as to whether American Eagle's proferred reason for Plaintiffs' displacement is pretext. Accordingly, the Court finds to the extent American Eagle moves for summary judgment on Plaintiffs' discrimination claims under the ADEA and TCHRA, the Motion should be **DENIED**.

**B. Plaintiffs' Retaliation Claims Under the ADEA and TCHRA**

American Eagle argues Plaintiffs cannot establish two elements of their *prima facie* claim of retaliation under the ADEA and TCHRA.[7] (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 25-30; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 27-35.) First, American Eagle contends Hovanas and MacAlla did not engage in protected activity because the grievance they filed did not directly oppose a practice outlawed by the ADEA and was not filed in good faith. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 25-29; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 28-31.) American Eagle further notes MacAlla's participation in the internal investigation did not constitute protected activity because it did not pertain to an instance

[7] American Eagle has conceded that the Plaintiffs' displacement constituted an adverse employment action. (Def. American Eagle Airlines, Inc.'s Br. In Supp. Of Its Mot. For Summ. J. On All of Pl. James Hovanas' Claims 25; Def. American Eagle Arlines, Inc.'s Br. In Supp. Of Its Mot. For Summ. J. On All of Pl. James MacAlla's Claims 27.)

of age discrimination. (Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 28-31.) Additionally, American Eagle argues there is no evidence showing a causal connection between the grievance filing and/or internal investigation and the Plaintiffs' displacement. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 29-30; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 33-35.) Finally, American Eagle notes its need for a RIF constitutes a legitimate, non-discriminatory reason for the adverse employment action. (Br. In Supp. Of Mot. For Summ. J. On Hovanas' Claims 30-31; Br. In Supp. Of Mot. For Summ. J. On MacAlla's Claims 35-37.)

Plaintiffs counter that they did engage in protected activity by filing the grievance because the creation of the Seniority List was clearly associated with age-related matters. (Hovanas' Resp. 11-12; MacAlla's Resp. 11-12.) Further, MacAlla contends his participation in the internal investigation constituted protected activity because his participation bolstered American Eagle's rationale for terminating him. (MacAlla's Resp. 12-13.) Plaintiffs further argue the temporal proximity between the protected activity and their displacement establishes a causal connection. (Hovanas' Resp. 13-14; MacAlla's Resp. 13-15.) Finally, Plaintiffs argue American Eagle's proffered reason for the displacement is pretextual because younger, less experienced employees were retained, American Eagle possessed a possible motive to eliminate older employees, American Eagle hired new employees by the end of 2009, and a majority of the evaluators making the termination decision were not qualified to assess Plaintiffs' capabilities. (Hovanas' Resp. 15-17; MacAlla's Resp. 15-17.)

The Court will begin its analysis by determining whether Plaintiffs have sufficiently established a *prima facie* claim for retaliation. An employee engages in protected activity when he opposes a practice made unlawful by the ADEA or TCHRA or participates in any investigation or proceeding under the ADEA or TCHRA. *See* 29 U.S.C. § 623(d); TEX. LAB. CODE § 21.055; *Holt*

*v. JTM Indus.*, 89 F.3d 1223, 1225 (5th Cir. 1996); *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1123 (5th Cir. 1998). MacAlla participated in an internal investigation regarding a knife incident that occurred at the Training Center. The knife incident appears to have no connection to any type of age discrimination. Therefore, the resulting internal investigation necessarily did not arise under the ADEA or TCHRA. The Court thus finds MacAlla's participation in the internal investigation did not constitute protected activity.

However, both Plaintiffs also filed a grievance regarding their omission from the Seniority List. Plaintiffs allege the creation of the Seniority List is determined by each employees' years of experience with American Eagle and thereby necessarily involves issues of age. While Plaintiffs' grievance did not explicitly include the term age discrimination, one could reasonably infer that, by opposing the Seniority List, Plaintiffs were opposing a practice they believed discriminated based on age. *See Hovanas v. Am. Eagle Airlines, Inc.*, No. 3:09-cv-0209-B, 2009 WL 4639492, at *5 (N.D. Tex. Dec. 8, 2009) ("While the Plaintiffs' grievance letter may not specifically refer to 'age discrimination,' a strong inference can be drawn from the document that Plaintiffs were omitted from the Seniority List *due to their age*."). As such, a material issue of fact remains as to whether Plaintiffs engaged in protected activity.[8]

In regard to whether a causal connection exists between Plaintiffs' protected activity and their subsequent displacement, the Court notes that "[c]lose timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation." *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188

[8]Because an issue of material fact remains as to whether the Plaintiffs engaged in protected activity in general, the Court does not reach the issue of whether such activity occurred in good faith.

(5th Cir. 1997)(citing *Armstrong v. City of Dallas*, 997 F.2d 62, 27 (5th Cir. 1993)). Plaintiffs' displacements occurred nine days after their filing of a grievance. The close temporal proximity between the two events adequately raises an issue of material fact as to this element. Accordingly, the Court finds Plaintiffs have sufficiently stated a *prima facie* case of retaliation under the ADEA and TCHRA.

The Court next looks to whether American Eagle has proffered a legitimate, non-discriminatory reason for the adverse employment action, and whether such reason is mere pretext for age discrimination. American Eagle contends its decision to terminate Plaintiffs was made as part of a RIF. As previously noted, a RIF is presumptively treated as a legitimate, non-discriminatory reason for an adverse employment action. *See Tex. Instruments*, 100 F.3d at 1181. As such, Plaintiffs bear the burden of showing the RIF to be pretext.

As evidence showing such pretext, Plaintiffs have offered their contention that they were both over age 60 and more qualified than those employees retained. Again, the Plaintiffs rely on the chart comparing each instructor's qualifications and their own recollections of never having received a negative performance review to support this point. (*See* Hovanas App. 2, 6-10; MacAlla App. 2, 6-10.) Plaintiffs additionally offer evidence of an American Eagle consultant's report in which it was suggested more experienced and highly paid employees should be eliminated to make American Eagle more competitive in the airline industry. (Hovanas App. 44-47; MacAlla App. 44-47.) The report's identification of American Eagle's "longevity with its employees" as an issue needing to be addressed gives rise to an inference American Eagle could have had a motive to eliminate its longest lasting, and potentially oldest employees. (*Id.*) Further, Plaintiffs provide deposition testimony indicating American Eagle subsequently hired new instructors shortly after displacing Plaintiffs. (*See*

Hovanas App. 38-41; MacAlla App. 37-40.) American Eagle's decision to hire new employees so shortly after its RIF potentially calls into question their need to reduce their employee force in the first place. Finally, Plaintiffs attest to the fact most of the evaluators making the ultimate displacement decision had too little experience supervising and /or working with Plaintiffs to properly assess their qualifications. (*See* Hovanas App. 4-5; MacAlla App. 5.) Taking this evidence into account, the Court finds Plaintiffs have sufficiently raised an issue of material fact as to whether American Eagle's proferred reason for their displacement was pretext to age discrimination. As such, to the extent American Eagle moves for summary judgment on Plaintiffs' retaliation claims under the ADEA and TCHRA, the Motions should be **DENIED**.

## IV.

## CONCLUSION

The Court finds issues of material fact remain as to Plaintiffs' discrimination and retaliation claims under the ADEA and TCHRA. As such, the Court finds American Eagle's Motions for Summary Judgment, should be and hereby are **DENIED** (docs. 32, 34).

**SO ORDERED.**

**DATED May 18, 2010**

**JANE J. BOYLE**
**UNITED STATES DISTRICT JUDGE**